## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

TREIBER & STRAUB, INC.,

    Plaintiff,

    v.                            Case No. 04-C-0069

UNITED PARCEL SERVICE, INC., and
UPS CAPITAL INSURANCE AGENCY, INC.,

    Defendants.

# DECISION AND ORDER

On January 21, 2004, the plaintiff, Treiber & Straub, Inc., filed this action claiming that

the defendants failed to comply with the requirements of the Carmack Amendment to the

Interstate Commerce Act, 49 U.S.C. § 14706(c)(1)(A), and failed to effectively limit their

liability in regard to the air shipment of a diamond ring. The plaintiff also alleges breach of

contract. The plaintiff seeks compensation in the amount of $50,000.00 together with costs

and expenses. On March 19, 2004, the defendants answered the complaint.

## JURISDICTION AND VENUE

The parties initially stipulated that jurisdiction is proper in this court under 49 U.S.C.

§ 14706(d), frequently referred to as the Carmack Amendment. However, the Carmack

Amendment applies to ground carriers and is not applicable to air carriers. Arkwright-Boston

Mfrs. Mut. Ins. Co. v. Great Western Airlines, Inc., 767 F.2d 425, 428 (8th Cir. 1985); E. J.

Rogers, Inc. v. UPS, 338 F. Supp. 2d 935, 938 (S.D. Ind. 2004). The plaintiff acknowledges

this in its response brief and contends that federal common law governs this matter, which

would presumably give the court statutory federal question jurisdiction under 28 U.S.C.§ 1331.

A federal common law contractual claim will support jurisdiction so long as it demonstrates on the face of the complaint the implication of a sufficiently proximate federal interest to require, at least arguably, the application of a federal standard. Turner/Ozanne v. Hyman/Power, 111 F.3d 1312, 1318 (7th Cir. 1997). Here, the allegations of the complaint show that the plaintiff's claim is based upon the loss of goods during interstate transportation by an air carrier.

A shipper can bring a cause of action against an air carrier under federal common law for goods lost or damaged by the air carrier. See, e.g., Sam L. Majors Jewelers v. ABX, Inc., 117 F.3d 922, 928, 929 (5th Cir. 1997). In Sam L. Majors, the court extensively analyzed the history of federal common law as applied to common carriers, as well as the federal regulation of air carriers and subsequent deregulation. The court concluded that federal common law occupies the field in relation to limitation of liability by an air carrier and concluded that such disputes are properly adjudicated pursuant to the court's federal question jurisdiction. 117 F.3d at 926. Other circuits are in agreement. See e.g., Read-Rite Corp. v. Burlington Air Express, Ltd., 186 F.3d 1190 (9th Cir. 1999); Nippon Fire & Marine Insurance Co., 235 F.3d 53 (2d Cir. 2000). This court finds the jurisdictional analysis set forth in these cases to be persuasive and concludes that it has jurisdiction over this action pursuant 28 U.S.C. § 1331 because the matter presents a federal question.

Venue is proper under 28 U.S.C. § 1391. The case was assigned according to the random assignment of civil cases pursuant to 28 U.S.C. § 636(b)(1)(B) and General Local Rule 72.1 (E.D. Wis.). The parties have consented to United States magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c) and General Local Rule 73.1 (E.D. Wis.).

The parties have filed cross motions for summary judgment. These motions are ready for resolution and will be addressed herein.

-2-

## STANDARD FOR SUMMARY JUDGMENT

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); McNeal v. Macht, 763 F.Supp. 1458, 1460-61 (E.D. Wis. 1991). "Material facts" are those facts that under the applicable substantive law "might affect the outcome of the suit." See Anderson, 477 U.S. at 248. A dispute over "material facts" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

The burden of showing the needlessness of a trial – (1) the absence of a genuine issue of material fact; and (2) an entitlement to judgment as a matter of law – is upon the movant. In determining whether a genuine issue of material fact exists, the court must consider the evidence in the light most favorable to the nonmoving party. See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., Ltd., 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. Anderson, 477 U.S. at 267; see also, Celotex Corp., 477 U.S. at 324; Fed. R. Civ. P. 56(e). "Rule 56(c) mandates the entry of summary judgment, . . . upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322 (emphasis added).

Before setting out the relevant facts, the court notes that Civil L. R. 56.2 (E.D. Wis.) sets forth additional requirements for motions for summary judgment. The court of appeals for this circuit has "repeatedly upheld the strict enforcement of the requirements of district

-3-

court local rules." See Waldridge v. Hoechst Corp., 24 F.3d 918, 921 (7th Cir. 1994). In the case at bar, the parties submitted a stipulation of facts in accordance with Civil L.R. 56.2(a).

The rule provides:

(a) Motion. The moving papers must include either (1) a stipulation of facts between the parties, or (2) the movant's proposed findings of fact supported by specific citations to evidentiary materials in the record (e.g., pleadings, affidavits, depositions, interrogatory answers, or admissions), or (3) a combination of (1) and (2).

(1) The movant must present only the factual propositions upon which there is no genuine issue of material fact and which entitle the movant to judgment as a matter of law, including those going to jurisdiction and venue, to the identity of the parties, and to the background of the dispute.

(2) Factual propositions must be set out in numbered paragraphs, with the contents of each paragraph limited as far as practicable to a single factual proposition.

In addition to the stipulated facts of the parties, the plaintiff submitted two affidavits in support of its motion for summary judgment: the affidavit of Michael J. Straub and that of Peter D. Poole. Pursuant to the local rules, these submissions should have been set forth as proposed findings of fact supported by specific citations to evidentiary materials in the record so the defendant could have properly responded. The defendant contends that the affidavit of Mr. Straub is mostly redundant, and the affidavit of Mr. Poole is irrelevant and lacks foundation.[1] Nevertheless, the defendant states that these affidavits do not create genuine issues of material fact that would prevent the grant of summary judgment. Therefore, the relevant admissible facts in the affidavits will be included.

---

[1] The affidavit of Peter D. Poole details a telephone conversation he had with a UPS customer service representative after he learned of Mr. Straub's loss. Mr. Poole's telephone conversation with the UPS representative centered around a hypothetical jewelry shipment. In addition to including hearsay, this telephone conversation is unrelated to the loss of the ring at issue in the instant case and is irrelevant to the matter before the court. Furthermore, the transaction at issue in this case did not take place over the telephone. Rather, it was conducted online via the UPS website.

-4-

## FINDINGS OF FACT

The plaintiff, Treiber & Straub, Inc., (Treiber & Straub) is a Wisconsin corporation engaged in the retail jewelry business. Its principal place of business is located in Brookfield, Wisconsin.

The defendant, United Parcel Service, Inc. (UPS) is a Delaware corporation engaged in the business of transporting goods in interstate commerce with its principal place of business located in Atlanta, Georgia. Defendant UPS is a common carrier which transports and delivers goods in interstate commerce. UPS operates pursuant to a written tariff, which is available, among other places, at www.ups.com.

Defendant UPS Capital Insurance Agency, Inc., (UPS Capital) is a wholly owned subsidiary of UPS Capital Trade Protection Services, Inc., which is a wholly owned subsidiary of UPS Capital Corporation. UPS Capital Corporation is a wholly owned subsidiary of United Parcel Service of America, Inc. UPS Capital, with its principal place of business in Atlanta, Georgia, is the program administrator for the UPS Shipper's Interest Program (Excess Value Insurance Program). Defendant UPS Capital and/or its affiliated licensed entities and/or individual insurance producers, as applicable, is licensed in all states where a license is required to conduct business as an insurance agent. UPS Capital and/or its affiliated licensed entities and/or individual insurance producers, as applicable, is subject to regulation by each such states' Departments of Insurance or other regulatory body.

Norman Silverman Co. (Silverman) is a jewelry wholesaler located in Los Angeles, California. It shipped a diamond ring to the plaintiff. On September 15, 2003, Michael J. Straub, president of Treiber & Straub, used UPS' online internet shipping service to ship the ring (the package) back to Silverman in Los Angeles, California.

-5-

In order to use the online internet shipping service, the shipper must first agree to the "My UPS Terms and Conditions" on the UPS website. In addition to having to accept these "Terms and Conditions" when logging on to the website, the first time a shipper makes a shipment using the UPS website the shipper must again click to agree to these terms. UPS also provides a copy of the relevant Rate and Service Guide to each of its regular shippers on an annual basis.[2] The Rate and Service Guide includes the UPS Terms and Conditions of Service, which effectively mirror the terms contained in the UPS tariff, and also incorporates the provisions of the UPS tariff.

Pursuant to terms of the UPS shipping contract, UPS is not responsible for the loss of or damage to any package that is prohibited from being shipped via UPS, including any package having a value of over $50,000.00. Since the year 2000, UPS has sent a brochure to its shippers on an annual basis describing the terms of UPS's excess value insurance.[3]

Mr. Straub purchased UPS Next Day Air service, together with the maximum amount of insurance offered under the Excess Value Insurance Program by inserting: "Insured Val. ($50,000.00)." The Treiber & Straub Daily Shipping Detail Report did not include the "articles of unusual value" exclusion to both the UPS tariff and the applicable insurance policy, but the shipping document incorporates the tariff and the insurance policy. At the time Mr. Straub completed the shipping document, he contends that he was unaware that the package was excluded from insurance coverage because it had a value of more than $50,000.00. Mr.

---

[2]The stipulated facts do not indicate that the plaintiff was a regular shipper of UPS, nor is there any indication that the plaintiff received the Rate and Service Guide. Therefore, the court will not consider this fact in determining whether summary judgment is appropriate.

[3]The stipulated facts do not state the date these brochures were sent to shippers each year. They also do not state that this brochure was shipped to the plaintiff, nor is there any acknowledgment of its receipt by the plaintiff. Therefore, the court will not consider this fact when ruling on the summary judgment motion.

-6-

Straub also states that he was unaware that the insurance he purchased from UPS Capital would be nullified because the actual value of the package exceeded $50,000.00.

UPS picked up the package containing the ring from Treiber & Straub, but failed to deliver it to Silverman. The package was not recovered. The ring has a value of more than $50,000.00.

The plaintiff filed a claim for the loss with UPS and with UPS Capital through UPS Capital's licensed third party claims adjuster, Crawford & Company. UPS denied the claim based on the "articles of unusual value" provisions of its tariff. An "article of unusual value" is defined as one having a value of more than $50,000.00 Crawford & Company denied the claim based on the "articles of unusual value" exclusion of the applicable insurance policy.

At the time that UPS lost the package, Treiber & Straub had an insurance policy in force with Jewelers Mutual Insurance Company of Neenah, Wisconsin. Pursuant to that policy the insurer paid Treiber & Straub its policy limit of $25,000.00.

The plaintiff paid Silverman $105,000.00 for the loss of the package, in accordance with a release dated December 12, 2003. The plaintiff claims liquidated damages in the amount of $50,000.00.

The parties have also stipulated to the following documents:

**Exhibit A –** GIA Gem Trade Laboratory Report, dated 7/10/03, identifying the ring at issue.

**Exhibit B –** The "My Terms and Conditions" and the "Terms and Conditions of Service."

Under the section entitled "For Customers Located in the 48 Contiguous States, Alaska and Hawaii" the Terms and Conditions provide:

> The following paragraphs, along with the UPS Tariff, contain the general terms and conditions under which United Parcel Service ("UPS") is engaged in transportation of small packages (including

-7-

"Express Envelopes") in its territory and jointly through interchange with its affiliates.

Under the section entitled "Commodities Handled and Restrictions on Service", the Terms and Conditions provide:

UPS holds itself out to transport general commodities, as usually defined, subject to the following restrictions:

. . .

(c) No service shall be rendered in the transportation of articles of unusual value (as defined in the UPS Tariff), including, but not limited to:
(l) Any package with an actual value of more than $50,000 (U.S.).

Under the section entitled "Limitations of Liability," the Terms and Conditions provide:

Each UPS domestic package or international shipment is automatically protected by UPS against loss or damage up to a value of $100 (U.S.). Unless a greater value is recorded in the declared value field of the UPS source document or the UPS shipping system used, the shipper agrees that the released value of each domestic package or international shipment is no greater than $100 (U.S.)

. . .

UPS will not be liable for or responsible for loss or damage to: articles of unusual value (as defined in Item 460 of the UPS Tariff);

. . .

UPS will not be liable or responsible for the loss of or damage to any package, the contents of which UPS is not authorized to accept, which UPS states that it will not accept, or which UPS has a right to refuse.

**Exhibit C** —  Rate and Service Guide.[4]

**Exhibit D** —  Copy of the text of the annual UPS brochure.[5]

**Exhibit E** —  Treiber & Straub Daily Shipment Detail Report, 09/15/03.

---

[4] As noted previously, the stipulated facts do not indicate that the plaintiff was a regular shipper of UPS, nor is there any indication that the plaintiff received the Rate and Service Guide.

[5] As noted previously, the stipulated facts do not state the date when these brochures were sent to shippers each year. They also do not state that this brochure was shipped to the plaintiff, nor is there any acknowledgment of its receipt by the plaintiff.

**Exhibit F –** Release dated December 12, 2003, signed by Mr. Straub and Mr. Silverman.

**Exhibit G –** Copy of the applicable tariff.

Item 400 of the UPS Tariff states:

> The UPS Tariff; the effective UPS Rates and Service Guides and the description of UPS Services at www.ups.com, which are incorporated in the Tariff; and the UPS source document for each shipment, together comprise the complete and exclusive agreement of the parties, except as modified by any existing or future written agreement between the parties, and may not be contradicted or modified by any oral agreement.

Item 460 of the UPS Tariff states:

> ## DEFINITION OF ARTICLES OF UNUSUAL VALUE, WHICH ARE NOT ACCEPTED BY UPS FOR TRANSPORTATION
>
> Shippers are prohibited from shipping articles of unusual value via UPS. Articles of unusual value shall be deemed to include, but are not limited to:
>
> . . .
>
> (3) Any package having a value or declared value of more than $50,000.
>
> UPS will not be liable for any loss of, or damage to, articles of unusual value.

Item 535 of the UPS Tariff states:

> UPS will not be liable or responsible for the loss of or damage to any package, the contents of which shippers are prohibited from shipping, which UPS is not authorized to accept, which UPS states that it will not accept, or which UPS has a right to refuse.
>
> . . .
>
> UPS will not be liable or responsible for the loss of or damage to (1) articles of unusual value (as defined in Item 460).

Item 537 of the UPS Tariff states:

> The excess value insurance does not provide any insurance protection for packages or letters having an actual value of more

Case 2:04-cv-00069-PJG   Filed 08/31/05   Page 9 of 20   Document 27

than $50,000 even if a lesser amount is specified in the insured value field in the UPS shipping system used.

Item 1060 of the UPS Tariff states:

EXPEDITED SERVICE

Expedited Service may be selected by a shipper for general commodities, except articles of unusual value (as defined in Item 460), . . . .

. . .

Note 6 – UPS does not accept for transportation, and shippers are prohibited from shipping: articles of unusual value (as defined in Item 460);

**Exhibit H** – Copy of the insurance policy.

The relevant exclusion in the insurance policy provides:

SECTION II-EXCLUSION;
This policy does not cover or insure against:
(1) articles of unusual value, which include (but are not limited to):

. . .

(iii). . . any package or letter having a value of more than $50,000.00.

## ANALYSIS

The plaintiff brings this action seeking payment for the loss of a diamond ring shipped with defendant UPS. The plaintiff purchased defendant UPS' Next Day Air service through UPS' online internet shipping service. The plaintiff asserts that it purchased $50,000.00 in insurance coverage for the ring, the maximum amount offered by the defendant, and accepted this amount as being a limitation on the defendants' liability. The plaintiff states that it believed the defendants had sold it $50,000.00 of insurance coverage.

Defendant UPS has denied liability and defendant UPS Capital has denied the plaintiff's claim for payment. The defendants assert that the plaintiff's claim was denied based on the provisions regarding "articles of unusual value" in the tariff and the exclusion for

-10-

such items in the applicable insurance policy. The defendants assert that the real value of the ring exceeds the ring's declared value of $50,000.00 and that UPS does not accept these types of items for shipment, nor does it accept liability for their loss or damage.

### Federal Law Claim - Limitation of Liability by an Air Carrier

Federal common law applies when a shipper contests the validity of a contractual clause that limits a carrier's liability. Sam L. Majors, 117 F.3d at 927-931; see also Mudd-Lyman Sales , 236 F. Supp.2d 907, 910-911 (N.D. III 2002). In transactions involving air carriers, the contract for carriage may incorporate by reference outside materials in limiting liability. Sam L. Majors, 117 F.3d at 930-931.

In Sam L. Majors, the plaintiff, a jeweler, utilized the services of the defendant, an interstate air carrier, to ship several items of jewelry from Texas to New York. The plaintiff completed an air bill for each shipment and paid an additional fee because of the higher value of the items to be shipped. The back of the air bill included terms that excluded the carrier from liability for "gems or stones." Id. at 924. The air bill also incorporated by reference a "service guide," which provided that the air carrier was not liable for the loss of jewelry. Id. The plaintiff sued the defendant under Texas law in Texas state court after the shipment of jewelry was lost. The case was subsequently removed to federal court. The district court granted the air carrier's motion for summary judgment on the ground that the air bill in question barred the plaintiff's recovery.

The Court of Appeals for the Fifth Circuit affirmed, focusing on whether the liability limiting provisions were sufficiently plain and conspicuous to give reasonable notice of their meaning to the plaintiff. To make this determination, the court applied a two step analysis. "First, the physical characteristics of the air bill are to be examined to determine whether they provide reasonable notice to the customer." Id. at 930, citing Deiro v. Am. Airlines, Inc., 816

-11-

F.2d 1360, 1364 (9th Cir. 1987). "The second factor to consider is the conditions under which the shipment was made." Id. Upon examination of these factors, the court concluded that the air carrier was not liable because the air bill limited its liability. The court reasoned that the air bill, using sufficiently plain and conspicuous language, expressly prohibited shipping jewelry, and the plaintiff, an experienced shipper, had notice of this. Thus, the focus in Sam L. Majors was on whether the liability limiting provisions were clear and conspicuous so as to give reasonable notice of their meaning.

In the instant case, a review of Exhibit E, the Treiber & Straub Daily Shipment Detail Report, (the air bill) contains no reference to the tariff and the limitations of liability set forth therein. Yet, the focus does not rest entirely on the air bill, as advanced by the plaintiff. Rather, the focus of the inquiry is whether the plaintiff was provided reasonable notice of the shipping requirements and limitations.

In this case, the air bill did not constitute the entire contract of carriage. Item 400 of the UPS Tariff explicitly provides:

> The UPS Tariff; the effective UPS Rates and Service Guides and the description of UPS Services at www.ups.com, which are incorporated in the Tariff; and the UPS source document for each shipment, *together* comprise the complete and exclusive agreement of the parties, except as modified by any existing or future written agreement between the parties, and may not be contradicted or modified by any oral agreement.

(Exhibit G) (emphasis added).

The tariff is set forth on the UPS website used by the plaintiff. In order to use the online internet shipping service offered by UPS, the plaintiff was required to agree to the terms and conditions, including the tariff, set forth on the website. In addition to having to accept these terms and conditions when logging on to the UPS website, the first time the

-12-

plaintiff made a shipment using the UPS website, it was required to again click to agree to these terms.

The parties have stipulated to Exhibit B, the document that set forth the terms and conditions. That document clearly states that UPS will not be liable for or responsible for loss or damage to articles of unusual value, which includes any package with an actual value of more than $50,000.00. See Exhibit B. The plaintiff agreed to these limitations when it utilized the UPS website to make arrangements for shipping the ring. The undisputed facts establish that the plaintiff would not have been able to complete the shipping process and receive an air bill if it had not clicked on the Terms and Conditions and agreed to them. Furthermore, the tariff also plainly excludes articles of unusual value and clearly states that UPS is not allowed to accept such items for shipment.

In this case, the UPS website was utilized to facilitate the shipment. The terms and conditions of the website shipping service, as well as the tariff, were incorporated by reference in the air bill via the website. The air bill itself was generated from the website. Outside materials may be incorporated by reference in limiting liability. See, e.g., Sam L. Majors, 117 F.3d at 930-931 (incorporating service guide); Deiro, 816 F.2d 1360 (recognizing enforceable limitation on liability through combination of statements on air ticket and incorporated service guide). Thus, under the circumstances, the plaintiff had reasonable notice of the liability limitations.

The plaintiff cites to E.J. Rogers in support of its contention that UPS failed to limit its liability because the air bill did not incorporate the tariff. However, the facts of E.J. Rogers, are clearly distinguishable. In that case, the jewelry shipper went to a UPS customer service counter in person in order to arrange for air shipment of a 2.64 carat princess cut diamond. The UPS employee was informed that the item to be shipped was a loose stone. UPS agreed

-13-

to ship the package which was insured for $11,000. The UPS air bill the jeweler completed to ship the package made no reference to the tariff or other extrinsic documents, nor were the tariff and service guide incorporated into the shipping contract. UPS did not deliver the package and failed to locate it. UPS refused to honor the jeweler's claim.

The court found that at no time was the plaintiff informed of the restrictions in the tariff. The court rejected UPS' argument that the tariff was available on its website since no reference to the tariff was made in any documentation actually provided to the jeweler at the customer counter. The court concluded that the mere existence of a tariff, without more, is insufficient to limit or avoid liability.

In contrast, in this case the plaintiff used UPS' online shipping service. To utilize such service, the plaintiff was required to agree to UPS' terms and conditions listed on the website in order to ship the ring via UPS. This was an on-screen acceptance. The plaintiff was given reasonable notice of the terms and conditions which were a precondition to using the shipping service and which governed the shipment. See e.g. Mudd-Lyman Sales , 236 F. Supp.2d at 911-912.

Although the plaintiff argues that it had no notice of the limitations provision in the air bill, UPS is not required to show proof of actual knowledge by the shipper. Sam L. Majors, 117 F.3d at 930. Failure of the plaintiff to read the matter plainly placed before it cannot overcome the presumption that the plaintiff assented to the terms of the carrier. Id.

Because the online terms and conditions agreed to by the plaintiff and the tariff contained express prohibitions against shipping articles of unusual value, the plaintiff had sufficient notice of the prohibition provisions relating to "articles of unusual value." As the court stated in Register.com, Inc. v. Verio, Inc., 356 F.3d 393, 403 (2d Cir. 2004):

-14-

While new commerce on the Internet has exposed courts to many new situations, it has not fundamentally changed the principles of contract. It is standard contract doctrine that when a benefit is offered subject to stated conditions, and the offeree makes a decision to take the benefit with knowledge of the terms of the offer, the taking constitutes acceptance of the terms, which accordingly become binding on the offeree.

(Internal citations omitted).

Here, the undisputed facts show that the plaintiff was offered shipment subject to certain terms and limitations which were clearly set out on the UPS website. The plaintiff's choice was either to accept the offer of contract and submit the shipment subject to the terms specified, or, if the terms were not acceptable, to decline to ship with UPS. The plaintiff's use of UPS' website with knowledge of UPS' terms and conditions constituted acceptance of the terms which, accordingly, are binding on the plaintiff.

The plaintiff also argues that the definition of "value" in the insurance policy is ambiguous, illusory, and unenforceable. The plaintiff contends that value in the jewelry business, could mean wholesale value, retail value or street value. The plaintiff asserts that the declared value of any shipment serves to establish a manifest value for the shipment of goods above which a carrier will not be held liable and any effort on the part of the defendant or its insurer to declare a value in excess of $50,000.00 in order to deny payment of a claim is unenforceable. Further, the plaintiff asserts that an insurer may not lead a reasonable purchaser into believing that there is coverage only to have an exclusionary provision entirely nullify it. To the extent this argument relates to the limitation of liability by an air carrier, it must fail.

The "Commodities Handled and Restrictions on Service" section of the Terms and Conditions clearly refers to actual value. (Exhibit B). Furthermore, the tariff makes it clear that the value being referred to in the phrase "articles of unusual value" is actual value. Item

-15-

537 of the tariff specifically states: "The excess value insurance does not provide any insurance protection for packages or letters having an actual value of more than $50,000 even if a lesser amount is specified in the insured value field in the UPS shipping system used." (Exhibit G).

The plaintiff also argues that the insurance coverage was merely an illusion because it paid a premium for insurance coverage it would never receive. To the extent that this argument goes to the limitation of liability by an air carrier, the court finds it is also without merit. The documents set forth on the UPS website make it clear that insurance can be purchased for items having a value up to $50,000.00. Anything with an actual value over and above that amount are considered "articles of unusual value" which UPS is not authorized to accept. The plaintiff purchased and would have been provided insurance coverage had it shipped an item with an actual value of $50,000.00 or less, in compliance with the agreed upon terms and conditions. The plaintiff's purchase of the insurance for this particular ring was contrary to UPS terms and conditions for shipping.

The plaintiff further argues that defendant UPS failed to comply with the federal "released value doctrine". Under federal common law, common carriers like UPS may limit their liability for injury, loss or destruction of packages on a released valuation basis where, in exchange for a lower rate, the shipper is considered to have released the carrier from liability beyond a stated amount. Mudd-Lyman Sales , 236 F. Supp.2d at 910, citing Kesel v. UPS, 2002 WL 102606, at *4 (N. D. Cal. 2002). Under the released value doctrine, "if a carrier wishes to enforce a limited liability provision, its contract must offer the shipper (1) reasonable notice of limited liability, and (2) a fair opportunity to purchase higher liability." Read-Rite Corp. v. Burlington Air Express, Ltd., 186 F.3d 1190, 1198 (9th Cir. 1999).

-16-

However, the released value doctrine does not require carriers to offer a full value rate. Kemper Ins. Cos. v. Fed. Express Corp., 252 F.3d 509, 513 (1st Cir. 2001).

In this case, the plaintiff agreed to and accepted all of the terms and conditions set forth by UPS. As part of those terms and conditions, UPS limited its liability to $100.00. (Exhibit B). UPS provided its customers with the opportunity to purchase higher liability, up to $50,000.00. This complies with the released value doctrine. See Read-Rite Corp., 186 F.3d 1198. In fact, the plaintiff purchased the higher liability coverage offered, but shipped an article with a value in excess of $50,000.00. The failure of the defendant to pay the plaintiff for its loss does not mean the defendant failed to comply with the released value doctrine. Rather, UPS and its insurance carrier clearly excluded items of unusual value from acceptance for shipment and from insurance coverage. (Exhibit G). The plaintiff agreed to these terms and is bound by them. Thus, to the extent this argument relates to the limitation of liability by an air carrier, it must fail.

In light of the foregoing, the court concludes that the package tendered by the plaintiff to UPS on September 15, 2003, had a value in excess of $50,000.00 and was, therefore, an article of unusual value pursuant to the terms of the UPS shipping contract. UPS is not authorized to ship articles of unusual value. The court finds that the plaintiff was provided plain and conspicuous notice of UPS's limitation of liability as it relates to articles of unusual value. Such notice was reasonable and the plaintiff is, therefore, bound by the limitation of liability. Accordingly, the defendant's motion for summary judgment on the issue of whether it effectively limited its liability will be granted.

## State Law Claim - Breach of Contract

Jurisdiction over any state law claims alleged by the plaintiff is based on the supplemental jurisdiction statute, 28 U.S.C. § 1367. The statute provides that a district court

-17-

"may decline to exercise supplemental jurisdiction" over the pendant state law claims if the court has dismissed all claims over which it has original jurisdiction. Wright v. Associated Ins. Companies Inc., 29 F.3d 1244, 1251 (7th Cir. 1994). When federal claims in a suit have been dismissed, balancing the factors to be considered under the pendent jurisdiction doctrine, "judicial economy, convenience, fairness, and comity," will generally indicate that jurisdiction over state law claims be dismissed. Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n. 7 (1988); Wright, 29 F.3d at 1251.

The plaintiff has raised a state law claim for breach of contract. In its complaint, the plaintiff claims that UPS breached its agreement with the plaintiff "in that it lost and failed to deliver the package as promised in the shipping document". (Complaint ¶12). In addition, the plaintiff claims that UPS violated Wisconsin contract law by misleading it into believing that it had purchased insurance coverage. The plaintiff maintains that the coverage was actually illusory because a premium was paid, but coverage was not provided. The plaintiff asserts that this violates public policy and state insurance law. The plaintiff contends that federal common law is not the exclusive source of law governing insurance contracts and that state law supports its federal common law claims.

The defendants argue that the plaintiff's state law claims are preempted by federal law. The defendants contend that federal common law exclusively governs an air carrier's liability and a shipper's remedies arising from contracts for the interstate shipment of property by air and provides plaintiff's sole avenue of recovery here.

Federal common law governs the limitation of liability portion of the contract at issue in this action. State law regulating the scope of air carrier liability for loss or damage to cargo is preempted by the Aviation Deregulation Act (ADA). See Sam L. Majors, 117 F.3d at 929 n.15, 931; see also Deiro, 816 F.2d at 1365 (applying federal common law); Read-Rite

-18-

Corp., 186 F3d. at 1197. The ADA provides that states may not "enact or enforce a law, regulation, or other provision having the force and effect of law relating to a price, route, or service of an air carrier . . .." 49 U.S.C. § 41713(b).

However, in American Airlines, Inc. v. Wolens, 513 U.S. 219, 222 (1995), the Supreme Court held that "the ADA's preemption prescription bars state-imposed regulation of air carriers, but allows room for court enforcement of contract terms set by the parties themselves." The Court stated that it did not read the ADA's preemption clause "to shelter airlines from suits alleging no violation of state-imposed obligations, but seeking recovery solely for the airline's alleged breach of its own, self-imposed undertakings." Id. at 228. Thus, the ADA "permits state-law-based court adjudication of routine breach of contract claims." Id. at 232. The Court explained:

> The ADA's preemption clause . . . read together with the FAA's saving clause, stops States from imposing their own substantive standards with respect to rates, routes, or services, but not from affording relief to a party who claims and proves that an airline dishonored a term the airline itself stipulated. This distinction between what the State dictates and what the airline itself undertakes confines courts, in breach-of-contract actions, to the parties' bargain, with no enlargement or enhancement based on state laws or policies external to the agreement.

Wolens, 513 U.S. at 232-33.

The plaintiff contends the defendant UPS breached its contract with the plaintiff "in that it lost and failed to deliver the package as promised in the shipping document." (Complaint at ¶ 12). The parties have not presented sufficient facts for this court to determine this breach of contract claim.

Resolution of the plaintiff's state law breach of contract claim requires further development and involves matters which are more properly resolved by the state courts.

-19-

Thus, upon due consideration, the court deems it appropriate to relinquish jurisdiction over the plaintiff's state law breach of contract claim.

In sum, summary judgment in favor of the defendant is granted on the plaintiff's federal common law claim that the defendants failed to effectively limit their liability with regard to the air shipment of a ring. The court declines to exercise jurisdiction over the plaintiff's state law claim for breach of contract.

## CONCLUSION

**NOW, THEREFORE, IT IS ORDERED** that the defendants' motion for summary judgment (Docket # 21) be and hereby is **granted** as to the federal common law claim that the defendants failed to effectively limit their liability.

**IT IS FURTHER ORDERED**, pursuant to 28 U.S.C. § 1367(c)(3), that the court declines to exercise jurisdiction over the plaintiff's state law claim for breach of contract. Accordingly, jurisdiction over said claim is relinquished to the state courts.

**IT IS FURTHER ORDERED** that the clerk of court shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 31 day of August, 2005.

BY THE COURT:

s/Patricia J. Gorence
PATRICIA J. GORENCE
United States Magistrate Judge

-20-